**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley D Ray,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LM General Insurance Company, a Massachusetts corporation,<br><br>　　　　　Defendants. | No. CV-17-00431-TUC-RM<br><br>**AMENDED ORDER** |

**IT IS ORDERED** that the Order filed on August 29, 2019 (Doc. 59) **is withdrawn** and replaced with the following:

Pending before the Court is Defendant LM General Insurance Company's[1] Motion for Summary Judgment (Doc. 48) and Plaintiff Bradley Ray's Motion to Strike (Doc. 56). For the reasons explained below, the Court will grant both motions.[2]

**I.　Motion to Strike**

On February 15, 2019, Defendant filed a Motion for Summary Judgment (Doc. 48) and an accompanying Statement of Facts (Doc. 49). Plaintiff filed his Response in

---

[1] Plaintiff originally named as Defendants "Liberty Mutual Insurance Group, a Massachusetts corporation" and "Liberty Mutual Insurance Company." (Doc 1-3). Defendant has asserted that the properly named defendant in this matter is "LM General Insurance Company, a Massachusetts corporation." (Doc. 7 ¶ 5).

[2] Plaintiff requested oral argument on both pending Motions. However, the parties' briefs thoroughly present the issues, and the Court finds that the Motions are suitable for resolution without oral argument. Accordingly, Plaintiff's requests for oral argument are denied.

Opposition to Defendant's Motion for Summary Judgment (Doc. 52), along with a Response to Defendant's Separate Statement of Facts and his own Separate Statement of Facts (Doc. 53). Defendant then filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment. (Doc. 54.) Along with its Reply, Defendant also filed a "Response to Plaintiff's Separate Statement of Facts" (Doc. 55), responding paragraph by paragraph to Plaintiff's Separate Statement of Facts (Doc. 53).

Plaintiff has filed a Motion to Strike Defendant's Response to Plaintiff's Separate Statement of Facts. (Doc. 56.) Plaintiff asserts that Defendant's filing (Doc. 55) was procedurally improper and should be stricken. (Doc. 57 at 2.) The Court agrees that Defendant's filing (Doc. 55) was not authorized by the rules and will order it stricken.

A party may move to strike "any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv. 7.2(m). The Local Rules require that parties moving and responding to a motion for summary judgment must submit separate statements of material fact. LRCiv. 56. The nonmoving party must also "indicat[e] whether the party disputes" each of the facts provided by the moving party. LRCiv. 56(b). "No reply statement of facts may be filed" by the moving party. *Id.* In other words, a moving party may not file "a separate responsive memorandum to any additional facts in the non-moving party's separate statement of facts." *Marceau v. Int'l Broth. of Elec. Workers,* 618 F. Supp. 2d 1127, 1141 (D. Ariz. 2009).

Defendant asserts that Federal Rule of Civil Procedure 56(c)(2) and 56(e) compel the contrary result. Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendant argues that it follows that a moving party must also "have the opportunity to dispute and object to the [non-moving party's] stated facts in support of their position." (Doc. 57 at 2-3.) While it is true that Federal Rule of Civil Procedure 56(c)(2) authorizes a moving party to dispute the admissibility of the non-moving party's evidence, such objections "must be included in the responding party's reply memorandum for the underlying motion and may not be presented

in a separate responsive memorandum." *E.E.O.C. v. AutoZone, Inc.,* No. 06-cv-0926-PHX-SMM, 2008 WL 2509302, at *1 (D. Ariz. June 18, 2008). Defendant, the moving party, did not include its objections in its Reply (Doc. 54) but instead filed a separate unauthorized pleading (Doc. 55).

Defendant's reliance on Federal Rule of Civil Procedure 56(e) also misses the mark. That rule provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Defendant argues that it is "obligated" to submit a separate filing responding to each fact in Plaintiff's separate statement of facts "to prevent a finding from the Court that those facts are undisputed." (Doc. 57.) This Court has previously explained that this argument "reflects a misunderstanding of the summary judgment standard." *Hunton v. Am. Zurich Ins. Co.,* No. CV-16-00539-PHX-DLR, 2018 WL 1182552, at *5 (D. Ariz. Mar. 7, 2018). A party moving for summary judgment bears a burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the moving party must demonstrate that material facts are undisputed, it follows that the moving party does not need to "prevent a finding from the Court that [the non-moving party's] facts are undisputed," as Defendant argues. (Doc. 57).

The Court finds that Defendant's "Response to Plaintiff's Separate Statement of Facts" (Doc. 55) is not authorized and will be stricken.

**II.    Motion for Summary Judgment**

Defendant argues for summary judgment on all three claims raised by Plaintiff. (Doc. 48.) First, Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because Plaintiff has not presented the "corroborating evidence" required by A.R.S. § 20-259.01(M) and by Plaintiff's insurance policy. Second, Defendant argues that summary judgment must be granted on Plaintiff's bad-faith claim because Plaintiff has failed to produce any evidence of bad faith. Finally, Defendant argues that Plaintiff's negligence claim is not recognized under Arizona law.

### A. Factual Background[3]

This action arises from Defendant's refusal to pay on Plaintiff's automobile insurance claim. Plaintiff alleges that an accident occurred because a "phantom vehicle" cut him off, forcing him to swerve and crash. (Doc. 1-3 ¶ 7.) Plaintiff filed suit in Pima County Superior Court on July 31, 2017, and Defendant removed the case to this Court. (Doc. 1.) Plaintiffs did not object to removal and stipulated that this Court has jurisdiction. (Doc. 5.) This Court has proper diversity jurisdiction because Plaintiff is a resident of Arizona, the Defendant is a corporation organized under the laws of the State of Illinois with a principal place of business in Massachusetts, and Plaintiff seeks the full $100,000 coverage provided by the insurance policy. (Doc. 1 ¶ 9.)

**1. The Accident**

Plaintiff crashed his motorcycle as he was riding northbound on Oracle Road near the town of Oro Valley. (Doc. 49 at ¶ 1; Doc. 53 at ¶ 1.) At the time of the accident, Oracle Road was under construction. (Doc. 49 at ¶ 3; Doc. 53 at ¶ 3.) The inner (or leftmost) northbound lane was closed for construction and blocked off by traffic control barricades. (Doc. 49 at ¶ 3; Doc. 53 at ¶ 3.) Plaintiff was traveling in what was normally the outer (rightmost) lane. (Doc. 49 at ¶ 3; Doc. 53 at ¶ 3). At the time, however, that lane was the inner (leftmost) lane, as the right shoulder had been converted into a temporary second lane of travel. (Doc. 49 at ¶ 3; Doc. 53 at ¶ 3.) Plaintiff therefore had a closed lane on his left and traffic moving on the shoulder on his right. (Doc. 49 at ¶ 3; Doc. 53 at ¶ 3.)

The accident occurred as the construction zone was ending and traffic barricades were shifting traffic back into the normal lanes of traffic. (Doc. 49 at ¶ 3; Doc. 53 at ¶ 3.) Plaintiff alleges that the accident occurred when a car to his right–normally the right shoulder–began merging into Plaintiff's lane. (Doc. 49 at ¶ 5; Doc. 53 at ¶ 5.) He alleges that when he perceived the vehicle entering his lane, he was forced to brake and shift his bike to the left, and that he consequently crashed. (Doc. 49 at ¶ 6; Doc. 53 at ¶ 6.) The other vehicle did not physically touch Plaintiff's motorcycle. (Doc. 49 at ¶ 2; Doc. 53 at ¶ 2.)

---

[3] Except as otherwise noted, the facts recounted are undisputed. (Docs. 49, 53.)

**2. Officer Horetski's Report**

Oro Valley Police Officer Dan Horetski reported to the scene of the accident and found Plaintiff lying on the ground conscious and able to answer questions. (Doc. 49-1 at 117.)[4] Plaintiff told Officer Horetski that a vehicle began merging into his lane from the right, and that Plaintiff swerved to avoid the vehicle and struck a construction barricade. (*Id*.) Officer Horetski noted that the "collision occurred as the barricade[s] were shifting traffic back into the normal lanes of traffic." (*Id*.) Officer Horetski also noted that "[w]hen looking at the barricade set up[,] there could have been some confusion as to which lane the motorcycle was to merge into as the barricades did not merge traffic completely back into the appropriate lane of travel." (*Id*.) No citation was issued and Plaintiff was transported to University Medical Center Hospital. (*Id*.)

Officer Horetski's report included a diagram of the accident scene, which provides context for his observation that there may have been confusion caused by the barricade set-up. (*Id.* at 118.) The diagram shows that, at the spot of Plaintiff's accident, barricades were shifting both lanes of traffic leftward back into their normal position. (*Id.*) A line of barricades crossed Plaintiff's lane directing him to merge left. (*Id.*) But the barricades did not fully cross Plaintiff's lane of travel. (*Id.*) They extended far enough to alert a larger



---

[4] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

vehicle that it was necessary to merge, but because they did not extend fully across the lane of travel, they left a gap. (*Id.*) Officer Horetski concluded that Plaintiff may have believedthat he could ride his motorcycle through this gap. (*Id.*) As Officer Horetski explained during his deposition, the construction setup was such that a motorcyclist could wrongly think "I'm supposed to go straight," in which case it would "very easily look [to the motorcyclist] like a car is merging into [him]." (*Id.* at 172:3-8).

### 3. Report of Reconstructionist Joseph Manning

Defendant retained accident reconstructionist Joseph E. Manning of Southwest Safety Consulting, LLC to provide an expert opinion. Mr. Manning provided a report based on his review of Officer Horetski's report, a recorded statement of Plaintiff, a repair estimate for the motorcycle, and a number of digital images of the crash scene. (Doc. 49-1 at 252-56.) Mr. Manning opined that, although Plaintiff stated he moved to the left in response to the phantom vehicle, the skid mark from his motorcycle was to the right relative to the lane. (*Id.* at 255.) Mr. Manning found that Plaintiff "was heading towards the last barricade when he applied his brakes" and that "[t]he orientation of his motorcycle with respect to the orientation of the barricades suggests he was inattentive as to the leftward transition of the lanes of travel." (*Id.*) Mr. Manning also suggested that"the evidence and orientation of the barricades suggests that Ray's actions may have been a response to the leftward motion of a vehicle in the number two lane as it followed the path of the barricades or his response may have been due to the presence of the barricade located in front of his motorcycle." (*Id.*) Either way, Mr. Manning concluded, "the collision was the result of inattentiveness by [Plaintiff]." (*Id.* at 256.) Mr. Manning subsequently provided a supplemental report that maintained the original report's conclusions. (*Id.* at 232.)

### 4. Report of Reconstructionist Dan Wall

Plaintiff retained accident reconstructionist Dan Wall of Wall Accident Reconstruction, Inc. (Doc. 49-1 at 266-275.) Mr. Wall reviewed Officer Horetski's incident report, transcripts of depositions of Joseph Manning, Officer Horetski, and Plaintiff, as well as Defendant's Mandatory Initial Discovery Pilot Response and police photographs

of the crash scene. (*Id.* at 266.) Mr. Wall opined that "[t]he construction company is most likely at fault for not maintaining the channelizing devices and making sure that a continuous line of devices were placed on the road and continued the devices to the next lane boundary." (*Id.*) He concluded that Plaintiff "most likely saw the car suddenly moving into his lane of travel and [] emergency braked using only his rear brake." Mr. Wall wrote that "[p]oor maintenance by the construction company, which caused a dangerous situation, basically caused [Plaintiff] to be confused as to the continuation of the lane that he was travelling." (*Id.* at 274.) Although Mr. Wall determined that poor maintenance by the construction company was ultimately at fault, he also opined that the vehicle that Plaintiff swerved to avoid "appears to have conducted actions in an aggressive way" because it fled the scene, "demonstrating lack of responsibility," and that the other driver "should have been aware to the conditions surrounding him and adjusted his speed and position accordingly to avoid contact with other vehicles." (*Id.*)

### B. Legal Standard for Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and show (1) that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and (2) that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216,

1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the Court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the Court must accept the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The Court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### C. Plaintiff's Negligence and Bad-Faith Claims

The Court first turns to Plaintiff's claims for negligence and bad faith, on which Plaintiff now agrees summary judgment must be granted.[5] Plaintiff pled that "Defendants' failure to adequately investigate, failure to treat Plaintiff's claims with equal consideration, failure to make a good faith offer, failure to make reasonable efforts to alleviate the necessity of litigation and failure to pay a reasonable amount" amounted to a breach of the covenant of good faith and fair dealing." (Doc. 1-3 ¶ 25.) An insurer breaches the covenant of good faith and fair dealing by (1) denying or delaying payment of a claim without a reasonable basis when it (2) knows it does not have a reasonable basis to do so or acts with reckless disregard. *Noble v. Nat'l Am. Life Ins. Co.,* 624 P.2d 866, 868 (Ariz. 1981). Here, Plaintiff has not identified evidence that Defendant lacked a reasonable basis for denying his claim. The Court will grant Defendant summary judgment on Plaintiff's bad-faith claim.

Plaintiff alleged a negligence claim on the grounds that he was "severely injured as a direct and proximate result of the negligence of an uninsured motorist," and that he was

---

[5] Plaintiff states in a footnote to his Response that "Plaintiff does not dispute that after completing reasonable discovery and investigation his claims for bad faith and the separate negligence claim against Liberty should be dismissed." (Doc. 52.)

1 therefore entitled to uninsured motorist benefits pursuant to his insurance agreement with Defendant. (Doc. 1-3 ¶ 29.) However, an insurance company's duty to the insured in Arizona "is defined by the terms of the policy and the implied covenant of good faith and fair dealing." *Miel v. State Farm Mut. Auto Ins. Co.,* 912 P.2d 1333, 1340 (Ariz. App. 1995). A cause of action "based solely on negligence which does not rise to the level of bad faith does not lie." *Id.* (citing *DeLaune v. Liberty Mut. Ins. Co.,* 314 So.2d 601, 603 (Fla. Dist. Ct. App. 1975)). Accordingly, Plaintiff's negligence claim fails as a matter of law, and the Court will grant Defendant summary judgment on Plaintiff's negligence claim.

### D. Plaintiff's Breach-of-Contract Claim

Plaintiff's remaining claim alleges that Defendant breached its automobile insurance policy agreement by refusing to pay on his claim. (Doc. 1.) Defendant argues that summary judgment must be granted on Plaintiff's breach of contract claim because Plaintiff has not presented "corroborating" evidence that the accident was caused by the wrongful actions of a third-party as required by Arizona state law when a claim is "based on an accident that involved an unidentified motor vehicle and no physical contact with the motor vehicle occurred." A.R.S. § 20-259.01(M).

Plaintiff responds that he has presented three sources of corroborating evidence. (Doc. 52 at 3.) First, Officer Horetski testified that "Plaintiff's version of the facts is plausible, and that Plaintiff was not inattentive." (*Id.*) Second, Plaintiff's expert accident reconstructionist authored a report stating that "there is sufficient physical evidence at the scene, including the barricade design, sand patches and skid marks, to support Plaintiff's version of events." (*Id.*) Third, Defendant's own accident reconstructionist admitted during his deposition that "there is no evidence proving the incident could not have happened as represented by Plaintiff" and that "it is 'plausible' that the crash could have occurred as Plaintiff states." (*Id.*)

#### 1. Arizona's Corroboration Statute

The Uninsured Motorist Act ("UMA") "establishes a public policy that every insured is entitled to recover damages he or she would have been able to recover if the

uninsured had maintained a policy of liability insurance in a solvent company." *Calvert v. Farmers Ins. Co. of Ariz.*, 697 P.2d 684, 687 (Ariz. 1985) (citation omitted). Section M of the UMA A.R.S. § 20-259.01(M), provides:

> If an insured makes a bodily injury or death claim under uninsured or underinsured motorist coverage based on an accident that involved an unidentified motor vehicle and no physical contact with the motor vehicle occurred, the insured shall provide corroboration that the unidentified motor vehicle caused the accident. For the purposes of this subsection, "corroboration" means any additional and confirming testimony, fact or evidence that strengthens and adds weight or credibility to the insured's representation of the accident.

Plaintiff does not dispute that the alleged unidentified vehicle did not make physical contact with him and he does not challenge the applicability of the UMA's corroboration requirement. (Doc 53 ¶ 2).

### 2. Plaintiff's Corroborating Evidence

Plaintiff argues that he has presented three pieces of corroborating evidence: (1) the testimony of Officer Horetski, (2) the report of Plaintiff's expert, and (3) the deposition of Defendant's expert. (Doc. 52 at 11). First, Plaintiff argues that Officer Horetski's deposition testimony provides corroborating support for Plaintiff's account of the accident. (*Id.*) A review of the entire deposition transcript, however, tells a different story. Plaintiff quotes the following from that testimony:

> Q. …did you find any physical evidence that would corroborate Mr. Ray's version of what happened?
>
> …The Witness: In regard to the – Mr. Ray saying that the vehicle was merging into his lane, yes, based on how the traffic barricades were set up, Mr. Ray could continue going northbound in the same lane of traffic that he was in; however, vehicles from the shoulder would also be merging into that same lane.

Plaintiff cites to this testimony for corroboration that an unidentified vehicle caused the accident by swerving into Plaintiff's lane. But that interpretation does not hold up when

Officer Horetski's statement is read in context. Immediately following the above-cited statement, Officer Horetski continued by observing:

> So, yes, there was confusion on the barricades which would merge vehicles from the shoulder back into Mr. Ray's lane and would **make it appear** that a vehicle was actually swerving or moving into him.

(Doc. 49-1 at 156:20-23) (emphasis added). The following colloquy occurred only a few moments later:

> Plaintiff's Counsel: Okay. So I understand that the way this construction area is configured, if I can hold this up next to you here, it is certainly plausible that a vehicle traveling in this lane here could enter Mr. Ray's lane of travel?
>
> Officer Horetski: Yes
>
> Plaintiff's Counsel: And they could do so accidentally correct?
>
> Officer Horetski: **It would have been purposefully. That's how the traffic barricades were set up.**

(*Id.* at 157:5-14) (emphasis added). Officer Horetski later testified explicitly that he believed that the unidentified vehicle did nothing inappropriate and that the accident was caused by the Plaintiff's misunderstanding as to the continuation of his lane:

> Defense Counsel: Is it your understanding that, based on the physical evidence at the scene, that Mr. Ray was reacting to a vehicle that was following the traffic pattern of lane 2?
>
> Officer Horetski: Yes.
>
> Defense Counsel: …[Y]ou found no evidence that a vehicle in the number 2 lane did anything inappropriate such as enter the number 1 lane of travel?
>
> Officer Horetski: That's correct.

(*Id.* at 168:6-169:5) (objections omitted). Therefore, read in appropriate context, it is clear that Officer Horetski's testimony contradicts rather than corroborates Plaintiff's account.

Plaintiff next relies on the deposition testimony of Defendant's expert accident

reconstructionist, Joseph Manning. Plaintiff quotes in key part Mr. Manning's testimony as follows:

> Plaintiff's Counsel: And that would support Mr. Ray's version of the events that there was a vehicle moving leftward – [objection omitted]
> …
> Joseph Manning: It would, it would support a part of his account that there may have been a vehicle moving towards the left…

The full answer, however, provides additional context:

> A: It would, it would support a part of his account that there may have been a vehicle moving towards the left **within its own lane. To what extent, we can't define.**

(Doc. 53 at 49:20-23) (emphasis added to portion omitted in Plaintiff's quotation above). Whereas Plaintiff's excerpt appears to corroborate his claim that another car merged into Plaintiff's lane, the entire quote demonstrates that Mr. Manning's opinion was that the other vehicle stayed within its own lane. Mr. Manning's testimony expresses his opinion that Plaintiff falsely believed that a vehicle was merging into him because of the faulty design of the barricades.

Finally, Plaintiff relies on the report and affidavit of his own expert, accident reconstructionist Dan Wall. (Doc. 52 at 12). Plaintiff describes Mr. Wall's conclusion as "that the barricade design, sand patches, impression in the sand and skid mark all indicate that Plaintiff was reacting to movement coming toward him from the left at the time of the incident." (*Id*.) Plaintiff does not address the ultimate conclusion of Mr. Wall that "[p]oor maintenance by the construction company, which caused a dangerous situation, basically caused [Plaintiff] to be confused as to the continuation of the lane that he was travelling…" (Doc. 49-1 at 274.) (emphasis added). It therefore appears that Plaintiff's expert agrees that it was Plaintiff that was in the wrong lane.

### 3. Discussion

Plaintiff argues that the above provides corroboration for his version of events. (Doc. 52.) However, Plaintiff's burden is not to corroborate that another vehicle existed.

Rather, Plaintiff must provide corroboration that "the unidentified motor vehicle caused the accident," which by its plain language suggests that the unidentified motor vehicle must have been at fault. A.R.S.§ 20-259.01(M).

The Court concludes that while the evidence cited by Plaintiff does corroborate the existence of another vehicle, it does not corroborate Plaintiff's account that the other vehicle, rather than the barricade design or Plaintiff's own inattentiveness, "caused the accident." *Id.* On the contrary, all three sources of evidence cited by Plaintiff tell the same story: the accident occurred when Plaintiff, due to the design of the barricades, did not realize that the lanes were merging left. Plaintiff therefore failed to move to the left and consequently mistakenly believed that a car in the lane to his right was merging into his lane. In fact, the other car was properly following the path of travel directed by the barricades.

The only suggestion that the other vehicle acted improperly is contained in Dan Wall's report. Mr. Wall agrees that the accident occurred because of Plaintiff's confusion caused by the barricade design, but he also asserts that the unidentified vehicle was nonetheless at fault. He writes that "[t]he vehicle that Mr. Ray tried to avoid contact[ing] appears to have conducted actions in an aggressive way." (Doc. 49-1 at 274). The vehicle "fled the scene of the accident, demonstrating lack of responsibility". (*Id.*) Moreover, Mr. Wall states, the other driver "should have been aware to the conditions surrounding him and adjusted his speed and position accordingly to avoid contact with other vehicles." (Doc. 49-1 at 274.)

Were Mr. Wall's conclusions plausible, his report would provide sufficient corroboration to create a genuine issue of material fact and defeat summary judgment. The Court, however, is unable to find any plausible basis for Mr. Wall's conclusory allegation that the unidentified vehicle's driver "was responsible for [Plaintiff's] avoidance reactions to his vehicles actions." (*Id.*) At his deposition, Mr. Wall was asked what the basis was for his conclusion that the other vehicle was aggressive and at fault. (*Id.* at 355.) He responded that the other vehicle "was merging into the motorcycle operator's lane of traffic, and that

vehicle should have – you know, when you're merging vehicles that – into a continuous lane, this is Arizona law that that – that you should try to avoid contact. You should merge when it's safe to do so." (*Id*.) While his contention that a driver should exercise caution while merging is correct, the evidence here suggests the other driver was not merging but was instead following the prescribed path of travel.

Mr. Wall's statement that it is Arizona law that one "should try to avoid contact" when merging apparently refers to A.R.S. § 28-729, which provides that a driver "shall drive a vehicle as nearly as practicable entirely within a single lane and shall not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety." But the statute's use of the language "shall not move the vehicle from that lane" applies to a situation where a motorist is purposefully shifting between lanes. *See Bliss v. Treece*, 658 P.2d 169, 172 (Ariz. 1983) ("The statutory language, 'shall not be *moved,'* indicates a decision to exclude from its reach those movements which are beyond the driver's control.") Here, the evidence is consistent that the other vehicle was not shifting lanes, but instead stayed within its own lane. Therefore, the law that Mr. Wall refers to as his basis for his conclusion that the unidentified vehicle was at fault does not apply to the accident at issue. The Court cannot identify any other plausible basis for Mr. Wall's assertion that another vehicle was at fault.

The circumstances of this case are somewhat unusual in that Plaintiff's expert agrees with the defense theory that the accident was caused by Plaintiff's mistaken belief that his lane continued forward. And Plaintiff's expert's statement that the other vehicle was nonetheless at fault is not supported by any evidence. Under the particular circumstances of this case, the Court finds that there is no genuine dispute of material fact with regard to whether Plaintiff has satisfied the corroboration requirement. The Court will therefore grant summary judgment for Defendant on Plaintiff's breach-of-contract claim.

. . . .

. . . .

. . . .

**IT IS ORDERED** that Plaintiff's Motion to Strike (Doc. 56) is **granted**. The Clerk of Court is directed to **strike from the record** Defendant's Response to Plaintiff's Separate Statement of Facts (Doc. 55).

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to update the docket to substitute Defendant LM General Insurance Company, a Massachusetts corporation, for Defendants Liberty Mutual Insurance Group and Liberty Mutual Insurance Company.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 48) is **granted**. The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

Dated this 29th day of August, 2019.

_____
Honorable Rosemary Márquez
United States District Judge